United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>DENNIS PERRY,<br>　　　　Defendant. | Case No. 18-cr-00345-SI-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**<br>Re: Dkt. No. 22 |

On November 1, 2018, the Court held a hearing on defendant Dennis Perry, Jr.'s motion to suppress evidence. On November 15 and 16, 2018, the Court held evidentiary hearings and heard testimony from witnesses and received evidence. After careful consideration of the parties' arguments and the record in this case, the Court hereby DENIES defendant's motion to suppress.

**BACKGROUND**

**I.　Procedural background**

On July 31, 2018, the government filed an indictment charging defendant Dennis Perry, Jr. with one count of violating 18 U.S.C. § 922(g)(1), Felon in Possession of Firearm and Ammunition. The indictment alleges, "[o]n or about May 20, 2018, in the Northern District of California, the defendant, Dennis Perry, Jr., having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess a firearm and ammunition[.]" Indictment at 3. Specifically, defendant allegedly possessed "one (1) Springfield, Model XD9, 9mm caliber handgun . . . , twenty-one (21) rounds of Jag, 9mm Luger ammunition, and one (1) round of Prime, 9mm Luger ammunition all in and affecting interstate and foreign commerce[.]" *Id*.

The indictment flows from the warrantless search and seizure of defendant and his vehicle on May 20, 2018, and the subsequent search of his storage locker and his vehicle pursuant to a warrant based on information obtained from the warrantless searches and seizures. As discussed in greater detail below, on May 20, 2018, San Mateo County Sheriff's officers conducted a traffic stop of defendant for alleged traffic violations, and during the stop the officers investigated defendant and his passenger in connection with a burglary of a storage locker at Public Storage, 145 Shoreway Road, San Carlos, California. The officers conducted a warrantless search of defendant and his vehicle, arrested defendant and his passenger, Patrick Jinzo, and then obtained a search warrant for a further search of defendant's vehicle and storage locker.

On October 18, 2018, defendant filed a motion to suppress "all fruits of (1) the warrantless seizure of his person; (2) the warrantless search of his person; (3) the warrantless search of his car; and (4) the search of his storage locker and car based on a tainted warrant." Dkt. No. 19 at 1. Defendant moved to suppress a Sentry safe, a lower receiver for Springfield subcompact XD firearm, an upper receiver for a Springfield subcompact XD firearm, two loaded ten-round magazines, and all ammunition. *Id*. at 1-2. In the alternative, defendant requested an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), based upon defendant's contention that San Mateo County Sheriff Deputy Andrew Constantino's search warrant affidavit intentionally contained materially false statements and omissions. In support of the motion, defendant filed the following: (1) a San Mateo County Search Warrant Affidavit, prepared by Deputy Constantino; (2) a copy of a video identified by the government as Deputy Constantino's "Dash Cam" from May 20, 2018; (3) a San Mateo County Sheriff's Office Felony Report regarding defendant's arrest on May 20, 2018, prepared by Deputy Constantino; and (4) a copy of a video identified by the government as San Mateo County Sheriff Deputy Duvall's "Dash Cam." Dkt. No. 20.

In opposition to the motion, the government filed: (1) a declaration dated October 24, 2018 from Deputy Constantino; (2) a copy of Deputy Constantino's "Dash Cam" and microphone audio from May 20, 2018; (3) a copy of the state search warrant signed on May 22, 2018; and (4) a copy of the San Mateo County Sheriff's Office vehicle tow policy. Dkt. Nos. 24-27.

In an order filed October 30, 2018, the Court directed the government to file a

supplemental brief and/or declaration elaborating on statements made in Deputy Constantino's October 24, 2018 declaration regarding what information he knew about defendant being a suspect in storage locker burglaries prior to the May 20, 2018 traffic stop. Dkt. No. 29. On October 31, 2018, the government filed a supplemental declaration from Deputy Constantino. Dkt. No. 30.

On November 1, 2018, the Court held a hearing on defendant's motion to suppress and request for an evidentiary hearing. After the hearing, the Court issued an order granting defendant's request for an evidentiary hearing. Dkt. No. 32. The Court found that the record was ambiguous as to when Deputy Constantino learned defendant was a suspect in other storage locker burglaries, and that defendant had made a sufficient showing that Officer Constantino had made incomplete and/or misleading statements in his search warrant affidavit.

On November 15, 2018, the Court held an evidentiary hearing during which Deputy Constantino testified and the Court admitted a number of exhibits, including: (1) a certified copy of a "RIMS"[1] audit for defendant; (2) a San Mateo County Sheriff's Office Felony Report regarding a February 2018 burglary at Public Storage located at 333 O'Neill Ave., Belmont, California, Case No. 18-01489; (3) a San Mateo County Sheriff's Office Felony Report regarding a March 2018 burglary at Bay Area Self Storage located at 100 Industrial Rd., Belmont, California, Case No. 18-02126.[2]

After the hearing, the government filed a request for a supplemental hearing to present additional testimony and evidence regarding what Officer Constantino knew about defendant prior to conducting the traffic stop. Dkt. No. 37. The Court granted the request, and on November 16, 2018, held a further evidentiary hearing. On November 16, 2018, the Court heard testimony from San Mateo County Deputy Sheriff Jerri Cosens and San Mateo County Sheriff's Records

---

[1] "RIMS" stands for "Records Information Management System," and it is an internal database of the San Mateo County Sheriff's Department. October 31, 2018 Supplemental Constantino Decl. ¶ 1 (Dkt. No. 30-1). The RIMS Audit for defendant is a printout listing every time any individual accessed defendant's profile page in RIMS, and lists the date, time, individual who accessed the page, and the activity performed, such as "viewed," "Mug Shot Added," and "Added to case _____ as [Suspect, Suspect Arrested, Witness etc.]."

[2] The Court also admitted into evidence additional exhibits that were duplicates of exhibits submitted by the parties with the motion briefing.

Supervisor Jennifer Prado. The Court also admitted into evidence one exhibit, the "RIMS" audit for San Mateo County criminal case 18-01489 (the February 2018 burglary at Public Storage located at 333 O'Neill Ave., Belmont, California).[3]

## II. Factual background

### A. The initial report of the burglary at Public Storage, 145 Shoreway Rd., San Carlos, California

At approximately 10:00 a.m. on May 20, 2018, San Mateo County Sheriff's Deputy Andrew Constantino was dispatched to the Public Storage facility at 145 Shoreway Road, San Carlos, California, to investigate a report of a burglary of one of the storage lockers. Leonida Decl. Ex. C at DP-0026 (Dkt. No. 20-3). Upon arrival, Deputy Constantino contacted the manager of the facility, Victoria Domingo, and she directed Constantino to locker number #A007. *Id*. Deputy Constantino examined the storage locker door and saw that the key lock had been drilled through, and that the back side of the door had a drill hole indicating that the door had been completely drilled through. *Id*.

Deputy Constantino interviewed the victim, Chad Edwards, who told Constantino that approximately $6,500 worth of tools had been stolen from his storage unit. *Id*. at DP-0030; Hong Decl. Ex. C at DP-0522.

Officer Constantino's October 24, 2018 declaration states,

> 2. On May 20, 2018, at approximately 10:01 a.m., I arrived at Public Storage, a storage facility, because of a report of a burglary of a storage locker. At Public Storage, I met with Victoria Domingo (manager) and Chad Edwards (victim). Domingo took me to Edwards's storage unit, unit A007. There I saw the lock to the storage unit's door had been drilled through.
>
> 3. Edwards told me that the last time he was at his unit was about a month prior to May 20th. He remembered locking his door and physically pushing the lock to check. At 9:40 a.m. on the 20th, he learned from Domingo that his unit was broken into. When he got to his unit, he noticed the lock was drilled. Edwards told me he had approximately $6,500 worth of tools stolen from his locker. Some of the

---

[3] Similar to the RIMS Audit for defendant's profile page, the RIMS Audit for Case No. 18-01489 shows every time an individual accessed the case file and contains a notation regarding the type of activity performed, with the initial entry being "Case Created."

4

United States District Court
Northern District of California

items stolen were: a floor jacks [sic], an air compressor, fishing poles, and a red Craftsman toolbox containing tools and firecrackers.[4]

4. Domingo told me on May 20, 2018 sometime in the morning a staff member told her a portion of the north cyclone fence near Shoreway Road had been cut. Domingo walked to the north and saw Dennis Perry, Jr., whom she had recognized. She saw him standing next to his vehicle, a newer model black Mercedes-Benz sedan with a paper plate. She described Perry to me: a black adult male, approximately 5'9" with a slender build, short black hair, brown eyes, black goatee, and he was wearing a black hoodie and black colored jeans. Domingo saw Perry pushing down the trunk of his car, which she thought appeared to be jammed. She also saw a black tool bag inside the trunk. She saw Perry with two other individuals, (1) a black adult male approximately 5'6" and 30 years old; and (2) a Hispanic female approximately 5'5" approximately 30 years old. After seeing the drilled lock, Domingo told Perry and the two people he was with to leave the premises.

5. Domingo recalled the first time she met Perry. She told me he arrived at Public Storage on May 6, 2018, before she tried to go to lunch. She said Perry told her a long story about how his Public Storage locker in San Mateo had been broken into and he needed to move. Domingo thought it was odd because she searched Public Storage's records and found no previous rental agreement between Public Storage and Perry. She stated Perry rented unit A009, which is near Edwards's unit, A007.

6. Domingo stated each locker is inspected every day and the complex was last checked on May 19, 2018, at 9:00 a.m. Domingo stated Public Storage does not have a surveillance camera, but it does have an electronic gate that records when renters come and go. She stated Perry's code is 306797 and he entered this code to enter on May 19, 2018 at 5:20 p.m. and exit at 5:45 p.m. that day. He entered again on May 20, 2018 at 8:31 a.m. and left at 9:10 a.m. that same day. At approximately 9:15 a.m., Domingo heard firecrackers explode inside the complex.

Constantino Decl. ¶¶ 2-6 (Dkt. No. 24-1). According to the police report, Domingo "provided [Officer Constantino] with a printout of the subjects who had entered and exited the storage facility in the past 24 hours." Leonida Decl. Ex. C at DP-0026 (Dkt. No. 20-3). The record does not state how many other people had entered and exited the storage facility in the 24 hours prior to the discovery of the burglary.

### B. Officer Constantino's investigation of defendant on RIMS

What happened next is disputed by the parties and was the focus of supplemental briefing

---

[4] The police report prepared by Constantino states that Edwards provided him with the following list of stolen items: (1) 2 floor jacks (1 red, 1 orange/white); (2) Red Craftsman air compressor, 15-20 gallons; (3) Red double stack Craftsman toolbox which contained hand tools, drills, wrenches, and grinders; (4) gray Craftsman bench grinder; (5) 4 fishing poles; (6) tool box which contained tools and firecrackers; (7) "weed whacker"; and (8) family pictures. Leonida Decl. Ex. C at DP-0030 (Dkt. No. 20-3).

and the evidentiary hearings. According to Deputy Constantino's October 24, 2018 declaration, "After talking to Domingo and Edwards, I looked up Perry on our internal database and learned he was a named suspect in several burglaries, including a city of Belmont storage unit burglary and a San Mateo county storage unit burglary." Constantino Decl. at ¶ 7. In response to an order from the Court directing the government to provide additional information regarding this statement, Constantino filed a supplemental declaration which states,

> 1. After talking to Domingo and Edwards at Public Storage, but before the traffic stop of Perry, I looked up the name Dennis Perry on a police internal database, RIMS. RIMS stands for Records Information Management System. RIMS enables San Mateo County law enforcement to generate reports, search for individuals that contacted law enforcement or were contacted by law enforcement, run license plates, see premise histories, among other things.
>
> 2. When I look up a name on RIMS, matching names will appear if the names are in RIMS. If a name is in RIMS, I can choose one to see the history of that name. When I click on the name a profile will appear. That profile contains: identifying information; photographs of the individual, address; telephone numbers; and San Mateo County law enforcement cases, which includes, contacts, violations, arrests or any citations. Each law enforcement case specifies how that individual is involved in a case. An investigating officer can input a variety of involvement descriptions, such as: suspect, arrested-suspect, involved-person, victim, witness, reporting party. Being named as a suspect means a San Mateo County law enforcement officer believes that the individual has committed the offenses specified in the case. Each case includes a police report, which any law enforcement officer can pull up and read.
>
> 3. In this case, after I looked up Dennis Perry on RIMS, I saw identifiers, photographs and San Mateo County law enforcement cases. On RIMS, I saw that Perry was named as an arrested-suspect and suspect in San Mateo County cases. I was able to see the criminal offense codes inputted for each of the cases Perry was named as a suspect or arrested-suspect. Those cases included: Perry being named as a suspect in a City of Belmont storage unit burglary and a San Mateo county storage unit burglary. I looked up the Belmont burglary in more detail and I learned that the Belmont storage unit burglary occurred at the Public Storage at 333 O'Neil Avenue in Belmont, California.
>
> 4. I cannot think of a specific reason why I did not include this information in my statement of probable cause.

Supp. Constantino Decl. ¶¶ 1-4 (Dkt No. 30-1).[5]

---

[5] Officer Constantino's search warrant affidavit for the search of defendant's storage unit and vehicle did not state that defendant was a suspect in other storage locker burglaries, nor did he include this information in his police report. Leonida Decl, Ex. A (Constantino's Search Warrant Affidavit); Ex. C (Police Report), Dkt. No. 20-1, 20-3. The search warrant affidavit and police report do state that defendant had been arrested for violations of Cal. Penal Code section 496(a) (possession of stolen property) and Cal. Vehicle Code section 10851(a) (theft of a vehicle), as well as drug-related crimes. Leonida Decl. Ex. A at DP-0525; Ex. C at DEF-000014.

At the December 15, 2018, evidentiary hearing, Deputy Constantino testified that after interviewing Edwards and Domingo he went to the San Carlos Substation where he looked up Perry's name on RIMS. Constantino Tr. at 6:18-7:9 (Dkt. No. 41); *see also* Gov't Ex. 3 at p.2 (RIMS Audit for Perry showing Constantino viewed Perry's page at 11:09 a.m. and 11:14 a.m. on May 20, 2018). Deputy Constantino testified that from the RIMS search he learned that Perry had been named as a suspect in auto burglaries and commercial burglaries, such as storage units. *Id*. at 7:19-20. On cross-examination, Officer Constantino stated that he learned Perry was a suspect in a Belmont storage unit burglary at 333 O'Neil Avenue in Belmont, California, by looking at the police report for that burglary, which was linked to Perry's profile page on RIMS. *Id*. at 19:19-20:21.

The police report for the storage unit burglary at 333 O'Neil Avenue in Belmont (Case No. 18-01489) was entered into evidence as Defense Exhibit F. Officer Constantino was questioned on cross-examination about that police report, and he admitted that Perry's name does not appear anywhere in that report until "Supplement 2" under a heading titled "Continued Investigation." *Id.* at 21:5-23:12. Under "Continued Investigation," Exhibit F states,

> On 05/20/2018, a commercial burglary occurred at the public storage located at 145 Shoreway Rd. in the city of San Carlos. I learned the following information from San Mateo County Sheriff's Office report #18-04747, authored by Deputy Constantino: Patrick Jinzo and Dennis Perry were contacted as a result of an investigative traffic stop after they were seen near a storage locker burglary located at 145 Shoreway Rd. in San Carlos, CA. . . .

Ex. F at DEF-000047. In other words, the police report for Case No. 18-01489 did not identify Perry as a suspect in that burglary until *after* Perry was arrested as a suspect in the Public Storage burglary at 145 Shoreway Road, San Carlos.

Nevertheless, Officer Constantino testified that when he looked up Perry's name in RIMS, he saw that Perry was listed as a suspect for Case No. 18-01489. After the close of the November 15, 2018 hearing, the government requested to reopen proceedings to put on evidence showing how Officer Constantino could have seen that Perry was listed as a suspect in Case No. 18-01489 when he searched Perry's name on RIMS on May 20, 2018. The Court granted that request and held a second evidentiary hearing on November 16, 2018.

At the November 16, 2018 hearing, San Mateo County Sheriff's Deputy Jerri Cosens testified. Officer Cosens is the individual who prepared Supplement 2 for Case No. 18-01489. Officer Cosens testified that she was one of the officers investigating the burglary of the storage unit at 333 O'Neil Avenue in Belmont, and that in March 2018 Perry became a suspect in that burglary. Cosens Tr. at 56:16-57:12 (Dkt. No. 42). Officer Cosens testified that she did not prepare a Supplement in March 2018 stating that Perry was a suspect or explaining why he was a suspect, but that she created an association between Perry and Case No. 18-01489 in which he was identified as a suspect. *Id.* at 57:13-58:21. The RIMS Audit for Perry shows that on March 7, 2018, Perry was "Added to case 18-01489 as a S" by "J. Cosens." Gov't Ex. 3 at p. 2. Similarly, the RIMS Audit for San Mateo County Case No. 18-01489 shows that Perry was added as a suspect to that case on March 7, 2018. Gov't Ex. 6 at p. 11.

Although Deputy Constantino's October 24 and 31 declarations state that he learned from the May 20, 2018 RIMS search that Perry was also a suspect in a "San Mateo County" storage locker burglary, the government did not present any evidence showing that Deputy Constantino's May 20, 2018 RIMS search revealed such information. Deputy Constantino was cross-examined about San Mateo County Case No. 18-02126, which involved a March 2018 burglary at Bay Area Self Storage, 100 Industrial Rd., Belmont, California. The police report for that case was admitted into evidence as Defense Exhibit G. The police report does not identify Perry as a suspect until "Supplement 3," which discusses Perry's May 20, 2018 arrest in this case. Def. Ex. G at DEF-000095. The RIMS audit for Perry shows that he was added as a suspect in Case No. 18-02126 on June 26, 2018, by Officer Jerri Cosens. Gov't Ex. 3 at p. 6. Thus, there is no evidence showing that Deputy Constantino saw that Perry was listed as a suspect in Case No. 18-02126 when he looked up Perry's name on RIMS on May 20, 2018.[6]

---

[6] As discussed *infra*, during the traffic stop Officer Constantino searched Patrick Jinzo's backpack, in which he found, *inter alia*, a driver's license and credit card in the name of Michael Tabak, a San Mateo County Sheriff's Office detective. Officer Tabak's storage locker at Bay Area Self Storage had been burglarized, and he filed the police report associated with Case No. 18-02126.
  The police report that Officer Constantino prepared after arresting Perry and Jinzo for the storage locker burglary at Public Storage, 145 Shoreway Rd., San Carlos, states that after Constantino found Tabak's stolen items in Perry's car, Constantino contacted Tabak and then

8

### C. The traffic stop

At approximately 11:33 a.m., County Communications contacted Deputy Constantino and told him that Perry had returned to the Public Storage facility at 145 Shoreway Road. Leonida Decl, Ex. C at DP-0027. The police report written by Deputy Constantino states,

> Before Deputy Duvall and I arrived at Public Storage, I notified him about the details to the commercial burglary and told him that Perry had rented storage locker #A009 in close proximity to #A007. As I was stopped on Shoreway Road, I noticed a black Mercedes-Benz driving towards me, matching the description that Domingo provided to me. I saw that the vehicle had tinted windows, violation of 26708(a)(1) CVC and no license plates, a violation of 5200(a) CVC. I conducted a U-turn on Shoreway Road and positioned my patrol vehicle directly behind the Mercedes-Benz. I conducted a traffic and investigative stop by activating my overhead emergency lighting equipment . . . . The Mercedes-Benz yielded westbound Holly Street just west of Shoreway Road. Deputy Duvall arrived with me as a cover unit.

*Id.*

After Deputy Constantino pulled Perry's car over, Constantino exited his car and conducted a driver side approach. *Id.* He saw that Perry had rolled down the windows to the vehicle. *Id.* In the back seat of Perry's car, Deputy Constantino saw plastic construction dollies, boxes, tools and "miscellaneous items." *Id.* Constantino also saw several screwdrivers and hand tools on the driver's floorboard. *Id.* Deputy Constantino spoke with Perry and informed him that the vehicle's tinted windows and paper license plates were Vehicle Code violations. *Id.* Perry told Constantino that he had previously been issued a citation for not having license plates on his vehicle, and he showed Constantino the citation. *Id.*

Perry gave Constantino his identification, and Perry's passenger, Patrick Jinzo, gave his identification to Deputy Duvall. *Id.* Constantino then returned to his patrol car and radioed dispatch for verification of the IDs and background checks. Hong Decl., Ex. B at 3:51 (Constantino's Dashboard Camera Video). While waiting for this information, Constantino stated, "I want to pull him out after the return and search him." *Id.* at 5:33. Dispatch confirmed that defendant had a valid driver's license, was not on parole or probation, and previously had been arrested for Cal. Penal Code section 496(a) (possession of stolen property), Cal. Vehicle Code section 10851(a) (theft of a vehicle), Cal. Health & Safety Code section 11378 (possession of

---

"later reviewed case #18-2126." Leonida Decl, Ex. C at DP-0028.

1  methamphetamine for sale), and Cal. Health & Safety Code section 11377(a) (possession of
2  methamphetamine). Hong Decl. Ex. B at 6:16; Constantino Decl. ¶ 9. Constantino also learned
3  that Jinzo's license was expired, that he had no outstanding warrants, and that he was not on
4  probation or parole. Leonida Decl. Ex. A at DP-0525; Hong Decl. Ex. B at 6:31. About six and
5  one-half minutes into the stop, Deputy Constantino returned to Perry's vehicle, knowing defendant
6  had a valid license and registration. Constantino did not issue Perry a citation for the traffic
7  violations.

8  Deputy Constantino then asked Perry to step out of the vehicle. *Id*. at 6:37. Constantino
9  asked Perry "if he knew anything about firecrackers being exploded at Public Storage." *Id*. at
10  7:16. Perry admitted that he "lit up one." *Id*. at 7:20. Deputy Constantino continued to ask Perry
11  questions, including whether there was "anything illegal inside the car[.]" *Id*. at 8:21. Perry
12  replied, "No." *Id*. Deputy Constantino asked if everything in the car belonged to Perry, and Perry
13  said some of the items belonged to two friends who also used his storage locker. *Id*. at 8:23.
14  Constantino then asked for permission to search the car. *Id*. Mr. Perry asked, "What for?" *Id*. at
15  8:45, to which the deputy responded, "I wouldn't be doing my job if I didn't ask." *Id*. at 8:50. Mr.
16  Perry declined, stating, "It's nothing disrespectful or anything. . . . I just like to exercise my
17  rights." *Id*. at 8:49-9:05.

18  At some point San Mateo Sheriff's Deputy Grasty arrived on scene. Constantino
19  questioned Perry a little longer and then ordered him to get into a patrol vehicle, at which point
20  Perry said, "I feel like I am being profiled." *Id*. at 11:16. Deputy Grasty, who stayed with Perry in
21  the vehicle, told him: "I'm going to get you out of here in just a minute." *Id*. at 11:25.

22  Deputy Constantino then questioned Jinzo about what he and Perry were doing at Public
23  Storage, "what was there yesterday," and whether he saw a tool box in Perry's storage locker. *Id*.
24  at 12:05-12:24. Jinzo stated there was a tool box, but in response to whether there was an air
25  compressor, Jinzo stated, "Not that I know of." *Id*. at 12:24-33. Constantino then asked whether
26  he saw any other Craftsman tools, and Jinzo replied that he saw Milwaukee brand tools and
27  "didn't see any Craftsman." *Id*. at 12:39-50. Constantino also asked whether Jinzo saw any
28  fishing poles, and Jinzo replied, "Yeah, a few. . . . Just a bundle of 'em. I don't know, maybe four

or five." *Id*. at 12:51-54. The recording is difficult to decipher around 15:00 where Constantino began to ask Jinzo again about the air compressor, a tool box, and a grinder. *Id*. at 15:25-59; *see also* Constantino Decl. ¶ 12 (recounting conversation with Jinzo).[7] Jinzo said he saw a single stack toolbox, and that he knew what a grinder was, but did not see one. Hong Decl., Ex. B. at 15:25-59.

Officer Constantino's declaration describes what happened next.

> I spoke to Jinzo and he stated the backpack on the front passenger floorboard belonged to him. I asked him if there was anything illegal in it. Jinzo told me he had a "pipe," which I understood to mean a methamphetamine pipe. He stated that some of the property inside the backpack belonged to Perry, including an accordion style folder.
>
> . . .
>
> I searched Jinzo's backpack and found a glass case. Inside the glass case, was a glass bulbous pipe, a marijuana pipe, tobacco products, and suspected methamphetamine. I also found the accordion style folder inside the backpack. I asked him if he saw a bench grinder and I described it. He stated no. I asked if he saw Perry break into a storage locker at Public Storage and he stated no.[8]
>
> I look inside and I found credit cards, driver's licenses, and social security cards inside the folder. One of the driver's licenses belonged to Michael Tabak. I recognized the DMV photo as Detective Michael Tabak of the San Mateo County Sheriff's Office. There were also credit cards with his name on them. I contacted Tabak and asked him if he had been the victim of a crime. Tabak stated his storage

---

[7] Constantino's declaration states,

> I asked Jinzo if he had seen an air compressor, and he said "not that I know of." I asked about Craftsman tools and he said there were Milwaukee tools and he said there was a tool box inside the vehicle. I asked if he saw fishing poles and he said a few. I then asked how many, and he said four or five and I confirmed that he stated four or five. I then told him I wanted to be honest with him and I told him I thought he was being untruthful. I then asked him if he had seen an air compressor and he said something to the effect of I don't know what that looks like. I asked if he saw a red double stack Craftsman toolbox and he said I saw a single stack.

Constantino Decl. ¶ 12.

[8] While Officer Constantino was searching the backpack, Constantino had a conversation with Deputy Grasty regarding the legality of a search of the vehicle. Hong Decl. Ex. B, 24:34-56. Deputy Grasty stated that they have to make a valid arrest and do an inventory search or "[y]ou need [Perry's] permission." *Id*. Deputy Grasty then tried to convince Perry to consent to the search of his vehicle, asking if Perry would object. *Id*. at 26:33. Perry answered, "Of course I would." *Id*. at 26:34. Deputy Grasty said, "You afraid we gonna find something?" *Id*. at 26:36. Perry responds he feels like he's being singled out, "all because I lit a firecracker?" *Id*. at 27:13. Deputy Grasty states, "The only connection you have to this whole event is that you were there this morning," and that defendant was not under arrest. *Id*. at 28:04, 28:50.

11

locker had been burglarized and several items were stolen, but could not recall what documents were missing.

Jinzo stated Perry asked him to hold onto the accordion file for him. Jinzo stated he did not know what was inside. Deputy Duvall opened the trunk of the Mercedes and found a red Craftsman toolbox. I took a digital image of the red Craftsman toolbox and sent it to Edwards while still at the scene and Edwards positively identified the toolbox as his.

Constantino Decl. ¶¶ 11, 13-15.

The deputies then arrested Perry and Jinzo for identity theft, possession of narcotics, and possession of stolen property, and Perry's car was towed. *Id*. at ¶ 16; Leonida Decl. Ex. C at DP-0034. The entire detention lasted one hour and twelve minutes.

On May 22, 2018, Constantino applied for a state search warrant for defendant's storage unit at Public Storage as well as his vehicle. Hong Decl. Ex. A, ¶ 16. California Superior Court Judge Mark Forcum authorized the search of Perry's vehicle and search storage unit. *Id*. In executing the warrant for the storage unit, the Sheriff's office discovered stolen items belonging to Edwards and others. In Perry's vehicle, they found a Sentry Safe containing the lower receiver for a Springfield firearm and a loaded magazine, as well as the upper receiver for the firearm in the back seat and another loaded magazine in the trunk. *Id*. These are the items defendant is charged with possessing in this case and that he seeks to suppress.

**DISCUSSION**

**I. Reasonable suspicion to prolong the traffic stop**

Defendant contends that his rights under the Fourth Amendment were violated because Deputy Constantino unreasonably prolonged the traffic stop to investigate the storage locker burglary. Defendant argues that even if Constantino was initially justified in seizing him during the traffic stop for the traffic violations, once the officers completed all tasks related to the traffic stop, they were required to release him and they were not permitted to conduct an unrelated investigation regarding the storage locker burglary. Defendant argues that the officers needed to have independent reasonable suspicion that defendant had committed the storage locker burglary to question him about that crime, and that they lacked any such reasonable suspicion.

"[T]he proponent of a motion to suppress has the burden of establishing that his own

Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. United States*, 439 U.S. 128, 131 n.1 (1978); *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005). "A stop of an automobile that is based on probable cause to believe that a traffic violation has occurred complies with the mandates of the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 810, 813 (1996); *see also United States v. Willis*, 431 F.3d 709, 717 (9th Cir. 2005) ("*Whren* and *Lopez–Soto* require that the officers have reasonable suspicion to stop a driver for traffic infractions, not that the officers issue citations.").[9]

In *Rodriguez v. United States*, __ U.S. __, 135 S.Ct. 1609 (2015), the Supreme Court held that a traffic stop "seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop." *Id*. at 1615. "An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id*. The Court held that "[b]eyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop[,]" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. To conduct tasks connected to an unrelated criminal investigation, an officer must have independent individualized reasonable suspicion to support the unrelated criminal investigation activities. *Id*. at 1615-16; *see also United States v. Gorman*, 859 F.3d 706, 715 (9th Cir.), order corrected, 870 F.3d 963 (9th Cir. 2017) ("Police simply may not perform unrelated investigations that prolong a stop unless they have 'independent reasonable suspicion justifying [the] prolongation.'").

Here, there is no question that the officers engaged in tasks unrelated to the traffic stop, and that those activities prolonged the traffic stop to a considerable degree. Approximately six and a half minutes into the traffic stop, Deputy Constantino had completed the traffic-stop related activities of checking Perry and Jinzo's identifications and determining whether there were any

---

[9] In *Lopez-Soto*, the Ninth Circuit held that the Supreme Court's decision in *Whren* did not change the settled rule that reasonable suspicion is sufficient to support an investigative traffic stop. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000).

13

outstanding warrants against Perry or Jinzo. Thus, absent reasonable suspicion to believe that Perry had committed the Public Storage burglary, the officers could not prolong the traffic stop to question Perry and Jinzo about the burglary.

"Reasonable suspicion requires 'specific, articulable facts' which, together with 'objective and reasonable' inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000) (quoting *United States v. Hernandez–Alvarado*, 891 F.2d 1414, 1416 (9th Cir.1989)). The reasonable suspicion analysis "must look at the 'totality of the circumstances' of each case to see whether the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *see also Thomas*, 211 F.3d at 1192 ("[T]he reasonable suspicion calculus takes into consideration the totality of the circumstances."). "Reasonable suspicion must be based on more than an officer's 'inchoate and unparticularized suspicion or hunch.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

The government argues that Constantino had reasonable suspicion to prolong the traffic stop because of the following: (1) Domingo told Constantino the storage lockers were examined on the morning of May 19, and there were no issues; (2) defendant was at Public Storage after the locks were checked on May 19 between 5:20 p.m. and 5:45 p.m. and before the discovery of the drilled lock on May 20 between 8:31 a.m. and 9:10 a.m.; (2) Domingo saw defendant near the burgled storage locker, and saw defendant putting a black "tool bag" in his trunk; (4) Constantino observed hand tools and screwdrivers in defendant's vehicle during the stop; (5) Constantino was aware that defendant had been arrested for "theft crimes" and was a suspect in storage unit burglaries; and (6) defendant admitted to lighting a firecracker at Public Storage, and firecrackers were stolen from Edwards' storage locker.

Defendant contends that these factors do not amount to reasonable suspicion. Defendant argues that the information from Domingo was nothing more than a hunch and that Domingo did not provide any specific or articulable facts suggesting that Perry had broken into the storage locker. Defendant argues that Domingo did not see Perry in possession of anything that was stolen from the storage locker, and defendant notes that Edwards did not report that a black tool

14

bag had been stolen. Defendant also argues that the fact that Constantino saw some small, miscellaneous hand tools in defendant's car did not create reasonable suspicion to believe that defendant stole Edwards' large power tools and a double-stacked toolbox. Defendant contends that in the absence of any facts pointing to reasonable suspicion to believe that he had burgled the storage locker, his "criminal history" of prior arrests contributes nothing to the reasonable suspicion determination.

Citing *United States v. Thomas,* 211 F.3d 1186 (9th Cir. 2000), defendant also argues that the information Officer Constantino learned from the RIMS search could not supply reasonable suspicion. In *Thomas*, FBI agents told a Pima County detective that he "might want to pay particular attention to a certain house" in Tucson because there was "a suspicion that there was a possibility that there might be some narcotics" there. *Id*. at 1188. The detective began surveillance of the house that same morning. He observed four people leaving the house by car in the morning, another person who left with a bag by car several hours later (and who was pulled over by an officer and searched, but no drugs were found), and then a little while later, he observed two men who arrived at the house in a Chevrolet El Camino, which had a large bed in the in the rear like a pickup truck. *Id*. & n.2. The men opened the garage and backed the El Camino half-way into the garage, and the men went inside the garage. The detective could see the front end of the vehicle, but not its rear, and could see a portion of the garage interior, which was stacked with ordinary household items. *Id*. at 1188. The detective then heard three or four thumps from inside of the garage, which the detective testified were consistent with the sounds of packages of marijuana being loaded into the car. *Id*. at 1189. The men then drove away in the vehicle, and the detective radioed two other officers to stop the El Camino. During the stop, the officers found five packages of marijuana in the bed of the car, as well as a shotgun behind the front seat. *Id*.

The Ninth Circuit held that the officers did not have reasonable suspicion to conduct the stop. The court held that the FBI tip "was devoid of specifics: no information about the occupants of the house, vehicles involved, any particular suspicious conduct, or the kind of narcotics at issue." *Id*. The court found that the tip "was expressed in an exceedingly equivocal and attenuated

15

manner: the 'suspicion' of a 'possibility' that there 'might' be narcotics. It was entirely conjectural and conclusory." *Id*. at 1190. The court also held that "[t]he number of arrivals and departures that Jankowski observed over the course of the morning and afternoon was not in any respect unusual, and the detective did not have any information as to whether the people coming and going were residents, family members, frequent visitors, or strangers." *Id*. The court noted that "the only relevant evidence Jankowski possessed regarding the presence or absence of drug activity contradicted his theory that the house was used" because the individual who had left with the bag and who was pulled over and searched did not have any drugs on him. *Id.* Finally, the court held that the detective's testimony about hearing the thumps of packages consistent with dropping of marijuana packages could not support reasonable suspicion because marijuana "does not have a distinctive sound" and "[t]he thumps that Jankowski heard could have been generated by dropped 12– or 13–pound bags or bales of potting soil, cut grass, bird seed, dog food— anything." *Id*. at 1191.

Defendant contends that the information from Domingo and the RIMS search of Perry's name are like the FBI tip in *Thomas*. Defendant argues that "Ms. Domingo's bare allegation that Mr. Perry was somehow involved in the storage locker burglary at her facility was not supported by any specific or articulable facts." Defendant argues that there was no information in the RIMS database explaining why defendant was listed as a suspect in the Belmont storage locker burglary, and to the contrary, the police reports for the Belmont storage locker burglary as of May 20, 2018 did not mention defendant's name anywhere.

The Court finds that it is a close question but concludes that the government has met its burden of production by coming forward with "specific and articulable facts," *Terry*, 392 U.S. at 21, to show that Officer Constantino had reasonable suspicion to believe that defendant had committed the storage locker burglary prior to the traffic stop.[10] *See United States v. Willis*, 431 F.3d 709, 715 n.5 (9th Cir. 2005) (on a motion to suppress evidence based on traffic stop, stating that government has burden of production to come forward with specific and articulable facts to

---

[10] The Court does not rely on defendant's admission that he had set off the firecracker, as that admission was made during the traffic stop in response to Officer Constantino's questions.

16

support reasonable suspicion, and defendant has ultimate burden of proof). Constantino knew from Domingo that Perry had been seen near the burgled storage locker the morning the burglary was discovered, and that he had been on the property the prior evening. Constantino saw that the lock to the storage locker had been drilled, and Domingo reported seeing Perry putting a "tool bag" in his car. Further, when he pulled Perry over for the traffic stop, Officer Constantino saw screwdrivers and hand tools on the driver's floorboard and tools in the backseat. Constantino also knew from the "return" that Perry had been arrested for other theft crimes, including receipt of stolen property and theft of a vehicle. *See Burrell v. McIlroy*, 464 F.3d 853, 858 n.3 (9th Cir. 2006) ("Although a prior criminal history cannot alone establish reasonable suspicion or probable cause to support a detention or an arrest, it is permissible to consider such a fact as part of the total calculus of information in these determinations.").

Significantly, Constantino knew from the RIMS search that another San Mateo County Sheriff's Deputy had identified Perry as a suspect in a recent February 2018 storage locker burglary in Belmont.[11] Although Constantino did not know from the RIMS search why defendant was a suspect in the Belmont storage locker burglary, the Court finds that the RIMS search information is somewhat more specific than the FBI tip in *Thomas*. The FBI tip in *Thomas* was "exceedingly equivocal and attenuated," and there was no information about the occupants of the house, particular suspicious conduct, or kind of narcotics. Here, Officer Constantino was investigating a May 19-20, 2018 storage locker burglary, and learned that another officer in his department had identified Perry as a suspect in a storage locker burglary that occurred in February 2018. In the Court's view, the RIMS information would not, on its own, provide a sufficient basis for reasonable suspicion. However, the RIMS information combined with the facts discussed above provided Constantino with a particularized and objective basis to believe that Perry had committed the Public Storage burglary, and thus the officers were permitted to prolong the traffic stop. Accordingly, the Court finds that the deputies did not violate the Fourth Amendment during

---

[11] As discussed *supra*, the government did not present any evidence showing that on May 20, 2018, Officer Constantino's RIMS search of Perry's name showed that Perry was a suspect in another "San Mateo County" storage locker burglary.

17

the traffic stop and the Court DENIES defendant's request to suppress the evidence obtained from the warrantless searches.

## II. Officer Constantino's search warrant affidavit

Defendant raises several challenges to the search warrant and Officer Constantino's search warrant affidavit. First, defendant contends that the search warrant is invalid because Officer Constantino's affidavit hinged on the fruits of the prolonged detention. However, the Court's conclusion that Officer Constantino had reasonable suspicion to justify the prolonged detention forecloses that contention.

Second, defendant contends that Officer Constantino's search warrant affidavit intentionally or recklessly contained materially false statements and/or misleading omissions of fact. Defendant argues that Officer Constantino made the following misleading statements in his affidavit: he told the issuing judge that Jinzo "confirmed he had seen a red Craftsman-brand air compressor tank and a red Craftsman-brand tool box. I asked if he had seen any fishing poles. Jinzo told me he had seen four." Leonida Decl. Ex. A at DP-0526. Defendant argues that the dash cam videos show that these statements were false because: (1) when Constantino asked if Jinzo had seen an air compressor, Jinzo first replied, "not that I know of"; (2) when Constantino asked if there were any other Craftsman tools," Jinzo said, "I didn't see any Craftsman," and that Perry's tools were all Milwaukee brand; (3) and when Constantino asked if the locker contained any fishing poles, Jinzo said it contained "just a few of them" and then later said "four to five." Defendant also argues that Officer Constantino omitted from his affidavit the fact that when he asked Jinzo whether he saw a Craftsman-brand bench grinder, Jinzo said "no."

Officer Constantino was questioned about his search warrant affidavit at the November 15, 2018 evidentiary hearing. Officer Constantino testified that although Jinzo initially said he had not seen an air compressor, Jinzo also said he did not know what an air compressor was, and that after Constantino described it, Jinzo said he had seen an air compressor in Perry's storage locker. Constantino Tr. at 12:8-13:20 (Dkt. No. 41). With regard to the fishing poles, Constantino testified that when he asked Jinzo if he had seen any, Jinzo said "four to five." Constantino stated

18

that he wrote that Jinzo said "four" fishing poles based on his recollection. *Id*. at 13:23-14:14:16. Constantino also testified that Jinzo stated he saw a single-stack tool box, "which to my knowledge he saw one piece to a two-piece set." *Id*. at 12:2-5.[12] Constantino stated he did not think the judge needed to know that Jinzo denied seeing a bench grinder, but that he did include in his affidavit the fact that Jinzo said he did not see Perry break into any storage lockers. *Id*. at 14:20-15:19. Constantino also testified that this was the second search warrant affidavit he had ever written, and that he has been a police officer for about three years. *Id*. at 16:11-24.

"To prevail on a *Franks* challenge, the defendant must establish two things by a preponderance of the evidence: first, that 'the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant[,]' and second, that the false or misleading statement or omission was material, *i.e.*, 'necessary to finding probable cause.'" *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (quoting *United States v. Martinez–Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005)). If both requirements are met, "the search warrant must be voided and the fruits of the search excluded . . . ." *Franks v. Delaware*, 438 U.S. 154, 156 (1978).

After review of the dash cam evidence, the search warrant affidavit, and Officer Constantino's testimony at the November 15, 2018 hearing, the Court concludes that defendant has not met his burden to succeed on the *Franks* challenge. The Court finds that defendant has not shown that Officer Constantino intentionally or recklessly made false or misleading statements or omissions in his affidavit. The statements about the air compressor and the number of fishing poles were not false, although it is the Court's view that Officer Constantino should have been more precise by including the facts that Jinzo initially said he did not see an air compressor, and that Jinzo said he saw a "few" and "four or five" fishing poles. The Court is more troubled by Officer Constantino's statement that Jinzo confirmed that he saw a red Craftsman-brand double stacked tool box because Jinzo did not actually say that. However, Constantino did ask whether

---

[12] The dash cam video shows that Constantino first asked whether Jinzo had seen any Craftsman-brand tools, and Jinzo said no, "only Milwaukee," and that Constantino later asked if Jinzo had seen a Craftsman-brand double stack tool box, and Jinzo replied that he saw a single-stack.

19

Jinzo saw a red Craftsman-brand double stack tool box, and Jinzo replied that he saw a single-stack, without specifically (again) denying that it was a Craftsman-brand tool box. The Court cannot conclude, however, that Constantino intentionally or recklessly made a false statement, and instead it appears to the Court that Officer Constantino does not have much experience preparing search warrant affidavits, and that he was sloppy in his phrasing. *See Perkins*, 850 F.3d at 1116 ("A negligent or innocent mistake does not warrant suppression."). Finally, the Court finds that the omission of the fact that Jinzo denied seeing a bench grinder was not material because Constantino included in the affidavit the statement that Jinzo denied seeing Perry break into a storage locker.[13]

**CONCLUSION**

For the foregoing reasons, the Court DENIES defendant's motion to suppress.

**IT IS SO ORDERED**.

Dated: December 19, 2018

                                              SUSAN ILLSTON
                                              United States District Judge

---

[13] The Court also finds that if the statements at issue were excised from the search warrant affidavit, the other facts included in the affidavit, including the stolen items found in Jinzo's backpack and the tool box in the trunk, were sufficient to establish probable cause.